# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON GREGORY COUNTY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL,[1]<br>Acting Commissioner of the<br>Social Security Administration,<br><br>　　　　Defendant. | No. CV 16-3592 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

# I.

# INTRODUCTION

Jason Gregory County ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") denying his application for social security benefits. The parties consented, pursuant to

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and is substituted for former Acting Commissioner Carolyn W. Colvin in this case. See Fed. R. Civ. P. 25(d).

28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Commissioner is REVERSED and this case is REMANDED for further administrative proceedings consistent with this decision.

## II.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual

functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## III.

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process in evaluating Plaintiff's case. At step one, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2015, and had not engaged in substantial gainful activity since June 8, 2010, his alleged onset date. (Certified Administrative Record ("AR") 30). At step two, the ALJ found that Plaintiff had the following severe impairments: history of herpetic meningoencephalitis; vascular headache syndrome; mood disorder due to general medical condition; and pain disorder associated with general medical condition. (AR 30). The ALJ ruled that Plaintiff's medically determinable impairment of "abdominal pain and problems" was nonsevere. (AR 31).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 31-32).

At step four, the ALJ determined that Plaintiff had the RFC to perform light work with the following limitations: lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk, and/or sit for six hours in an eight-hour workday; occasionally climb ladders, ropes, and scaffolds; frequently climb ramps and stairs; "should avoid" concentrated exposure to hazards; limited to work involving simple repetitive tasks, no more than occasional contact with coworkers, and no public contact. (AR 32).

In determining Plaintiff's RFC, the ALJ partially rejected the opinion of psychiatric consultative examiner Dr. Isadore Wendel, Ph.D. as inconsistent with Dr. Wendel's own notes and with other medical evidence. (AR 36). The ALJ also discussed a letter written by Plaintiff's treating neurologist, Dr. Pari Young, M.D., but the ALJ did not assign this letter any particular weight. (AR 36). The ALJ assigned "great weight" to the opinions of State agency medical consultants, but he rejected a 2011 State agency assessment on an earlier disability application as "overstat[ing]" Plaintiff's condition. (AR 37).

At step four, the ALJ determined that Plaintiff could not perform his past relevant work. (AR 37). At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC

and concluded that Plaintiff could perform jobs available in significant numbers in the national economy, including small parts assembler, garment folder, and textile assembler. (AR 37-38). Accordingly, the ALJ concluded that Plaintiff was not disabled under the Agency's rules. (AR 39).

**IV.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by "substantial evidence" in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir.

1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## V.

## DISCUSSION

Plaintiff alleges that the ALJ erred in three ways. First, Plaintiff contends that the ALJ improperly rejected his subjective complaints as not entirely credible. (Plaintiff's Memorandum of Points and Authorities ("Plaintiff's Memo") at 3-6). Second, Plaintiff contends that the ALJ erred in assessing an RFC that did not include limitations related to Plaintiff's headaches and irritable bowel syndrome ("IBS"). (Id. at 6-8). Third, Plaintiff contends that the ALJ improperly analyzed medical evidence from Dr. Wendel and Dr. Young, as well as the findings of the State agency consultants. (Id. at 8-11).

For the reasons discussed below, the Court agrees with Plaintiff that this case should be remanded to permit the ALJ to properly evaluate the medical evidence from Dr. Young and the State agency consultants and assess an RFC that properly accounts for Plaintiff's headaches and IBS.[2]

---

[2] Because the Court remands on these grounds, it is unnecessary to address Plaintiff's arguments regarding the ALJ's rejection of Plaintiff's subjective complaints.

7

**The ALJ's RFC Failed To Include Limitations For All Impairments Supported By The Record, And The ALJ Did Not Properly Evaluate The Medical Evidence**

**A. Legal Standards**

During step four of the five-step process, the ALJ must make a threshold determination as to the claimant's residual function. This determination is an administrative finding reached after consideration of all the relevant evidence, including the diagnoses, treatment, observations, medical records, and the Plaintiff's own subjective symptoms. See generally Social Security Ruling ("SSR") 96-5p, 1996 WL 374183 (SSA 1996). The RFC is what a claimant can still do despite existing limitations. See 20 C.F.R. § 404.1545(a)(1); see also SSR 96-8p, 1996 WL 374184, at *1-*2 (SSA 1996) ("RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). In evaluating RFC, the ALJ must "consider subjective symptoms such as fatigue and pain." Smolen, 80 F.3d at 1291.

In evaluating a claimant's RFC, an ALJ must properly analyze the medical evidence. See Hill v. Astrue, 698 F.3d 1153, 1159-60 (9th Cir. 2012). There are three types of medical opinions in social security cases: the opinions of (1) treating physicians

who examine and treat, (2) examining physicians who examine but do not treat, and (3) non-examining physicians who neither examine nor treat. Valentine v. Comm'r, 574 F.3d 685, 692 (9th Cir. 2009). Opinions of treating physicians are given the greatest weight because treating physicians are "employed to cure and [have] a greater opportunity to know and observe the patient as an individual." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Accordingly, where a treating physician's opinion is refuted by another doctor, the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996) (ALJ must provide clear and convincing reasons for rejecting an unrefuted treating physician's opinions); see also Ryan v. Comm'r, 528 F.3d 1194, 1198 (9th Cir. 2008).

**B. Analysis**

At step four, the ALJ determined that Plaintiff had the RFC to perform light work with the following limitations: lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk, and/or sit for six hours in an eight-hour workday; occasionally climb ladders, ropes, and scaffolds; frequently climb ramps and stairs; "should avoid" concentrated exposure to hazards; limited to work involving simple repetitive tasks, no more than occasional contact with coworkers, and no public contact. (AR 32).

The Court agrees with Plaintiff that the medical evidence is not adequately reflected in the RFC. First, as the ALJ acknowledged, the record documents extensively that Plaintiff "has had chronic, severe headaches." (AR 35). However, the RFC assessed does not appear to account for this condition. Although the ALJ stated that he did not find the "persistent headaches problem" itself to be "disabling," (AR 35), and noted that the headaches were "treated with medications," (AR 35), he did not satisfactorily explain why chronic, severe headaches would have no impact on Plaintiff's ability to work.

This is particularly troubling given the ALJ's somewhat selective characterization of the record. For example, the ALJ stated that "[t]he progress notes in July 2012 showed that [Plaintiff] had a dramatic improvement of his migraine severity and frequency, he had become dramatically less photophobic, and he is [sic] continuing not to take any medications and no narcotics." (AR 35). The ALJ later noted that Plaintiff's headaches "continued" and he was placed "back on medications in November 2012." (AR 36). The July 2012 progress note actually states that Plaintiff had discontinued narcotics and "over-the-counter" and "p.r.n." medications, but he was taking Depakote twice daily. (AR 538). More significantly, although Plaintiff reported "dramatic improvement" after starting Depakote, (AR 538), Plaintiff developed a tremor and elevated liver function test results and had to be "weaned off" Depakote as a result. (AR 539). By November 2012, after being "weaned off" Depakote, Plaintiff reported that he was suffering from "severe and unrelenting" daily headaches and was

"extremely photophobic." (AR 541). The ALJ's characterization of the evidence improperly omits this context and suggests that Plaintiff's improvement was greater and more sustained, and his headaches less severe on an ongoing basis, than the underlying evidence demonstrates. See Hill, 698 F.3d at 1161 ("[T]he ALJ improperly ignored or discounted significant and probative evidence in the record favorable to Hill's position . . . and thereby provided an incomplete [RFC] determination."); Attmore v. Colvin, 827 F.3d 872, 877 (9th Cir. 2016) (ALJ may not focus on isolated periods of improvement without examining broader context of claimant's condition); Garrison v. Colvin, 759 F.3d 995, 1018 (9th Cir. 2014) (ALJ was not permitted to "cherry-pick" from mixed results to support a denial of benefits).

Plaintiff's history of headaches was substantiated in part by a letter and treatment records from Dr. Pari Young, M.D. In a February 2012 note, Dr. Young stated that, in 2010, Plaintiff had been diagnosed with and treated for herpes simplex encephalitis and had suffered from "severe migraines and headaches" following that diagnosis. (AR 531). At that time, Plaintiff reported chronic daily headaches with severe headaches occurring six or seven times every month. (AR 531). Dr. Young reviewed Plaintiff's records and began to treat his headaches regularly after that with a variety of prescription medications. (See AR 535-37 (March 2012 progress note (prescribing Depakote and Imitrex)), 538-40 (July 2012 progress note ("weaning off" Depakote due to high liver function test and development of tremor)), 541-43 (November 2012 progress note (prescribing Topamax)), 544-46 (December 2012 progress note

(Plaintiff reported "somewhat manageable pain" since starting Topamax)), 559-61 (May 2013 progress note (Plaintiff reporting "much worsening" of bad headache days since March 2013 bout of pneumonia; increasing Topamax to "seizure doses")), 567-69 (August 2013 progress note (Plaintiff discontinued Topamax after developing kidney stones; prescribing amitriptyline and Keppra)), 570-72 (December 2013 progress note (prescribing propranolol))).

In a January 29, 2014 letter, Dr. Young stated that she had treated Plaintiff since February 2012. (AR 583). Dr. Young reported that Plaintiff had "severe, daily headaches that are refractory to medical treatment," which caused "severe headache pain on a daily basis." (AR 583). Dr. Young further reported that Plaintiff had had "severe side effects" from some headache medications and others had been ineffective, but she was "pursuing a referral to the Headache and Facial Pain center at UCLA." (AR 583).

The ALJ did not assign the letter any particular weight, but the ALJ appeared to conclude that the letter and Dr. Young's treatment records were either irrelevant to Plaintiff's allegations of disability or not credible because Dr. Young never explicitly recommended any restrictions on Plaintiff's ability to work. (AR 36). Although Dr. Young never explicitly assigned any work restrictions, it is error to conclude that severe, daily headaches would have no impact on Plaintiff's ability to work, as would be required to properly exclude them from consideration for an RFC. At most, Dr. Young's records were ambiguous on this issue, and it

12

was the ALJ's duty to develop the record further, Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (ambiguous evidence relevant to a finding of disability triggers the ALJ's duty to develop the record), particularly considering that Plaintiff was unrepresented by counsel during the hearing before the ALJ. (See AR 47-49); see also Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992) (where claimant is not represented, ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and "be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited"). The ALJ could have called a medical expert to testify or sought clarification from Dr. Young on this issue, but the ALJ did not do so. Therefore, the ALJ's analysis of Dr. Young's opinion was inadequate, and he provided insufficient reasons for not including in the RFC limitations related to Plaintiff's severe, chronic headaches.

The ALJ also did not provide adequate reasons for excluding from the RFC a restriction that Plaintiff required access to a restroom due to IBS. In 2011, in the course of evaluating a prior disability application, State agency medical consultant Dr. L. Bobba, M.D., reported that, "considering pain due to headaches," a sedentary RFC "w hazardous precautions [was] appropriate," and Dr. Bobba further noted that Plaintiff needed "easy access to rest room facilities due to diarrhea due to IBS." (AR 91). In 2012, State agency medical consultant Keith Quint, M.D., stated that Plaintiff's RFC was "LIGHT . . . with some limits," then similarly noted that Plaintiff would require "[b]ath room access for IBS."

13

(AR 109-10, 128, 133). Plaintiff's chronic diarrhea and IBS were also documented throughout the medical evidence by a variety of doctors. (AR 418, 447-50, 453, 456, 481-85, 491-92, 496-97, 502-03).

The RFC omits without meaningful explanation any limitations related to Plaintiff's IBS. In evaluating Plaintiff's severe impairments, the ALJ found that Plaintiff's "abdominal pain and problems" were medically determinable but nonsevere because his conditions were being "managed medically," with no "aggressive treatment" recommended, and the condition would be "amenable to proper control by adherence to recommended medical management and medication compliance." (AR 31). Additionally, the ALJ later rejected the opinions of the State agency consultants who previously recommended a base RFC of "sedentary" as "overstat[ing]" Plaintiff's condition. (AR 37). The ALJ ruled that "the more recent assessment is consistent with the current evidence." (AR 37).

Preliminarily, it is unclear whether the ALJ's finding that Plaintiff's "abdominal pain and problems" can be managed medically with no aggressive treatment obviates a finding that Plaintiff may require frequent access to a bathroom during work hours. In any event, the failure to find "abdominal pain and problems" severe at step two does not prevent the ALJ from considering these limitations at step four, as an ALJ formulating an RFC "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are 'not severe.'" SSR

14

96-8p, 1996 WL 374184, at *5 ("While a 'not severe' impairment[] standing alone may not significantly limit an individual's ability to do basic work activities, it may -- when considered with limitations or restrictions due to other impairments -- be critical to the outcome of a claim."). To the extent that the ALJ rejected the earlier opinions of State agency medical consultants because more recent opinions were "consistent with the current evidence," this finding is vague. Cf. Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions [of treating physicians] are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required."). Moreover, even if the ALJ had properly rejected the earlier assessment by Dr. Bobba, Dr. Quint made the same recommendation regarding Plaintiff's ability to access a bathroom. Therefore, the ALJ's analysis of the State agency consultants' opinions was inadequate, and he provided insufficient reasons for not including in the RFC limitations related to Plaintiff's IBS.

For the foregoing reasons, the matter is remanded for further proceedings. On remand, the ALJ should reassess Plaintiff's RFC and the medical evidence consistent with this Order.

## VI.

## CONCLUSION

Accordingly, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: June 9, 2017

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS/NEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**